UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WISCONSIN

_____

Jon Q. Wright, and JQ Licensing LLC

                     Plaintiff,

v.

Robert Snider d/b/a Trappers Point Camp,
Stratford Sign Company, Does 1-5

                     Defendant.

_____

Case No.: 3:22-cv-00347-JDP

**PLAINTIFF'S BRIEF IN SUPPORT OF ITS
MOTION FOR PRELIMINARY INJUNCTION**

Dated: August 5, 2022

Respectfully submitted
By: /s/ Dmitry Lapin
Dmitry Lapin, Esq.
Axenfeld Law Group, LLC
2001 Market Street, STE 2500
Philadelphia PA 19103
Dmitry@axenfeldlaw.com
917-979-4570

*Attorneys for Plaintiff Jon Q. Wright and JQ Licensing LLC*

# **TABLE OF CONTENTS**

| | |
|---|---|
| Table of Authorities………………………………………………………………….. | ii |
| I. INTRODUCTION………………………………………………………………….  | 1 |
| II. STATEMENT OF FACTS…………………………………………………………….. | 1 |
| III. ARGUMENT……………………………………………………………………… | 3 |
|     a. Legal Standard for Preliminary Injunctions…………………………………….  | 3 |
|     b. Plaintiff is Entitled to A Preliminary Injunction……………………………………  | 4 |
|         1. Plaintiff is Likely to Prevail on the Merits of its Copyright Infringement Claims….. | 5 |
|         2. There is a Clear Showing of Irreparable Harm………………………………………  | 6 |
|         3. The Balance of Hardship Favors Plaintiff………………………………………… | 7 |
|         4. Enjoining Defendant from Exploiting the Subject Work will Serve the Public Interest………………………………………………………………..………… | 8 |
|     c. Plaintiff Requests That No Security Bond Be Posted………………………………  | 8 |
| IV. CONCLUSION…………………………………………………………………..  | 10 |

# TABLE OF AUTHORITIES

**Cases**

*Abbott Laboratories v. Mead Johnson & Co.*, 971 F.2d 6, 12 (7th Cir.1992)……………………….3

*Apple Computer, Inc. v. Franklin Computer Corp.,* 714 F.2d 1240, 1255 (3rd Cir. 1983)……….8

*Atari, Inc. v. North American Philips Consumer Electronics Corp*.,
672 F.2d 607, 620 (7th Cir.1982)………………………………………………………………..4,6,8

*Bucklew v. Hawkins, Ash, Baptie & Co., LLP*., 329 F.3d 923, 926 (7th Cir. 2003)………………6

*Disney Enterprises, Inc. v. VidAngel, Inc*., 224 F. Supp. 3d 957, 978 (C.D. Cal. 2016)………….8

*Erickson v. Trinity Theatre, Inc.,* 13 F.3d 1061, 1067 (7th Cir.1994)…………………………….3

*Feist Publications, Inc. v. Rural Tel. Serv. Co., Inc*., 499 U.S. 340, 361,
111 S. Ct. 1282, 1296, 113 L. Ed. 2d 358 (1991)………………………………………………….5

*Foamation, Inc. v. Wedeward Enterprises, Inc*., 947 F. Supp. 1287 (E.D. Wis. 1996)…………..5

*General Leaseways, Inc. v. National Truck Leasing, Ass'n*.,
744 F.2d 588, 591 (7th Cir.1984)…………………………………………………………………4,7

*Graphic Design Mktg., Inc. v. Xtreme Enterprises, Inc*.,
772 F. Supp. 2d 1029 (E.D. Wis. 2011)…………………………………………………… 4,5,7

*Habitat Educ. Ctr. v. U.S. Forest Serv*., 607 F.3d 453, 458 (7th Cir. 2010)……………………...9

*Motown Record Co., L.P. v. iMesh.Com, Inc*., No. 03 Civ. 7339,
2004 WL 503720, at *7 (S.D.N.Y. Mar.12, 2004)………………………………………………..8

*Sem–Torq Inc. v. K Mart Corporation*, 936 F.2d 851(6th Cir.1991)……………………………..5

*Ty, Inc. v. GMA Accessories, Inc*., 132 F.3d 1167, 1179 (7th Cir.1997)…………………………6

*Warner Bros. Entm't, Inc. v. WTV Sys*., 824 F.Supp.2d 1003, 1015 (C.D. Cal. 2011)……………8

**Statutes and Secondary Authority**

17 U.S.C. §410(c)………………………………………………………………………………....5

17 U.S.C. §106…………………………………………………………………………………….5

4 Melville Nimmer & David Nimmer, Nimmer on Copyright § 13.02 (2021)…………………..6

Fed. R. Civ. Pro 65(c)……………………………………………………………………………..8

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WISCONSIN

_____

Jon Q. Wright, an individual;

                             Plaintiff,

   v.

Robert Snider d/b/a Trappers Point Camp,
Stratford Sign Company, Does 1-5

                            Defendant.

_____

Case No.: 3:22-cv-00347-JDP

**MEMORANDUM OF LAW IN SUPPORT OF PLAINTIFF'S MOTION FOR PRELIMINARY INJUNCTION AND ALTERNATIVE SERVICE**

## I. INTRODUCTION

Pursuant to and in accordance with the Federal Rules of Civil Procedure, Plaintiff submits this memorandum of law in support in light of Defendant Robert Snider's ("Defendant" or "Snider") willful use of Plaintiff's copyrighted work of art titled "JQ Fish Art: Walleye Green Lure" (the "Subject Work") to promote and advertise it business – Trapper's Point Camp. Despite repeated assurances from Defendant's former counsel that Defendant would cease and desist from its unlawful and infringing behavior, Defendant Snider continues in infringing Plaintiff's copyright. Courts grant motions support for relief in a variety of matters where intellectual property rights are implicated and Plaintiff requests that the Court grant the instant Motion.

## II. STATEMENT OF FACTS

All relevant facts are contained in the factual declaration of Jon Q. Wright and the declaration of Dmitry Lapin, Esq., plus accompanying exhibits. The following are the essential

facts necessary for granting the instant motion, as proposed by Plaintiff, or will otherwise be proven at an evidentiary hearing:

1. Plaintiff created/published the Subject Work in 1993 and thereafter registered the Subject Work in July of 2009. (See Exhibit A to Wright Decl.).

2. Defendant Robert Snider is an individual that resides in Stratford Wisconsin and operates a fishing camp/lodge in Ontario, Canada called Trapper's Point Camp. (See Complaint, Dkt #1, ¶6).

3. Plaintiff discovered the Defendants infringement of the Subject Work shortly before January of 2022 and thereafter instructed counsel to send Defendant Snider a Cease-and-Desist letter which included the Certificate of Registration, as well as the Subject Work itself. (See Exhibit A to Lapin Decl.)

4. Defendant Snider then retained his first counsel, Beau McGraw to respond to the January 2022 Cease-and-Desist letter. Mr. McGraw indicated that Defendant would in fact cease and desist in its infringing behavior and that co-Defendant Stratford Sign Company LLC would be providing a new logo that does not incorporate the Subject Work. (See ¶6 of Lapin Decl.)

5. In mid-June of 2022, it was discovered that Defendant Snider continued to infringe upon Plaintiff's copyrights to the Subject Work by displaying the same at events in Wisconsin and posting photographs from those events onto the Trapper's Point Camp Facebook account. The events and the publishing of the photographs occurred in March of 2022. (See Exhibit B to Lapin Decl.)

6. In mid-June of 2022 it was discovered that Defendant Snider continued to exploit the Subject Work within YouTube videos that were published onto the Trapper's Point Camp Facebook account in April of 2022. (See Exhibit C to Lapin Decl.)

7. In mid-June of 2022, it was discovered that Defendant Snider took photographs of physical signage bearing the Subject Work and published the same onto the same Facebook account in early June of 2022. (See Exhibit D to Lapin Decl.)

8. Lastly, in mid-June of 2022, it was discovered that Defendant Snider failed to remove all copies/displays of the Subject Work and the same were visible to the general public. (See Exhibit E to Lapin Decl.)

9. After initiating this litigation, Defendant's counsel was provided a copy of the Complaint and Accompanying Exhibits and was informed that Defendant was continuing in its infringing acts. At that time Plaintiff's counsel inquired whether a Motion for Preliminary Injunction would be necessary, or if Defendant Snider would cease and desist in all uses of the Subject Work. (See Exhibit F to Lapin Decl.)

10. Defendant's counsel McGraw unequivocally stated that the motion would not be necessary, and that Snider would cease and desist. (See ¶ 15 of Lapin Decl.)

11. In response, Snider removed certain photographs and edited content to remove the Subject Work, however a large body of content displaying the infringing logo remained visible for the public and continues to this day. (See ¶ 16 of Lapin Decl.).

12. Afterwards, Defendant retained new counsel, John P. Loringer. (See ¶ 17 of Lapin Decl.).

13. Plaintiff's counsel then informed Mr. Loringer that Defendant Snider failed to remove over 100 separate photographs published to the Trapper's Point Camp Facebook Account that Infringe on Plaintiff's copyrights to the Subject Work. Specific reference to two of the photographs were provided to Defendant's counsel. (See Exhibit G to Lapin Decl.)

14. In July of 2022, Defendant Snider published a new photograph onto the Trapper's Point Facebook account containing a pickup truck. On that truck is the Subject Work as contained in the infringing logo. (See Exhibit H to Lapin Decl.)

15. Defendant Snider is a resident of Stratford, Wisconsin, as such, this court has general jurisdiction over this Defendant. Additionally, Defendant Snider displayed the Subject Work in Wisconsin, at the very least, at events in Wisconsin. Defendant Snider marketed and promoted Trapper's Point Camp at these events. These act also confers this Court with Specific Jurisdiction over the Defendant. (See Complaint, Dkt #1, ¶¶ 5&33(a); see also Exhibit B-1 to Complaint)

### III.   ARGUMENT

**A. Legal Standard For Preliminary Injunctions**

To obtain a preliminary injunction, a plaintiff must establish these four factors: 1) likelihood of success on the merits; 2) irreparable harm if an injunction is not granted; 3) the balance of hardships, and 4) the impact on the public interest. *Erickson v. Trinity Theatre, Inc.,* 13 F.3d 1061, 1067 (7th Cir.1994). "When applying this standard to requests for preliminary injunctive relief, the Seventh Circuit has adopted a "sliding-scale" approach, under which the stronger the case is on its merits, the less irreparable harm must be shown." *Abbott Laboratories v. Mead Johnson & Co.,* 971 F.2d 6, 12 (7th Cir.1992).

### B. Plaintiff Is Entitled to A Preliminary Injunction

Defendant's infringing activities must be stopped immediately to prevent any further harm to Plaintiff. Plaintiff stands to suffer additional damages that are unlikely unquantifiable, in light of Defendant's obstinate refusal to cease and desist in exploiting the Subject Work. Upon initial notice by Plaintiff, Defendant Snider did take some efforts to remove the Subject Work from its logo and updated its website accordingly. However, as indicated in the Complaint and the accompanying Declarations, Snider continued to use the Subject Work several months after receiving the initial notice. Defendant's reckless disregard for Plaintiff's copyrights does not end there. Even after the initiation of litigation, notice of the lawsuit, and further assurances that Snider would cease and desist in its unlawful behavior, Snider continued to use the Subject Work for its own benefit, most recently publishing content onto the Trapper's Point Camp Facebook account where a pickup truck bearing the Subject Work is clearly visible. The only logical inference from this photograph is that Defendant Snider continues, to this day, to operate a pickup truck exploiting the Subject Work.

In the context of copyright infringement, a *prima facie* showing of infringement will ordinarily give rise to a presumption of irreparable harm or injury. *Atari, Inc. v. North American Philips Consumer Electronics Corp.,* 672 F.2d 607, 620 (7th Cir.1982); *see also Graphic Design Mktg., Inc. v. Xtreme Enterprises, Inc.,* 772 F. Supp. 2d 1029 (E.D. Wis. 2011), adhered to, No. 11-C-0051, 2011 WL 534337 (E.D. Wis. Feb. 8, 2011). When damages will be extremely difficult to calculate and prove, injunctive relief is appropriate to prevent the damage from occurring. *General Leaseways, Inc. v. National Truck Leasing, Ass'n.,* 744 F.2d 588, 591 (7th Cir.1984).

It is well-settled that "to establish infringement, two elements must be proven: (1) ownership of a valid copyright, and (2) copying of constituent elements of the work that are

original." *Graphic Design Marketing Inc. v. Xtreme Enterprises, Inc.* 772 F.Supp 2d 1029, 1032 (E.D. Wis. 2011) citing *Feist Publications, Inc. v. Rural Tel. Serv. Co., Inc*., 499 U.S. 340, 361, 111 S. Ct. 1282, 1296, 113 L. Ed. 2d 358 (1991). Under the Copyright Act, a certificate of registration obtained within five years of first publication establishes a presumption of ownership of a valid copyright. 17 U.S.C. §410(c). Here, the Subject Work was registered in July of 2009 but published in 1993 (See Exhibit A to Wright Decl.) While not satisfying the requirements of §410(c), the Certificate of Registration, contains a certification by Plaintiff that he is the author of the Subject Work, the date it was created/published, etc. In light of this, and the detailed account of how the Subject Work was created (see Wright Decl. ¶¶4-11) the Certificate has evidentiary value, and the same statute provides that "the evidentiary weight to be given to the registration is within the court's discretion" *Foamation, Inc. v. Wedeward Enterprises*, Inc., 947 F. Supp. 1287 (E.D. Wis. 1996) citing 17 U.S.C. § 410(c); *Sem–Torq Inc. v. K Mart Corporation*, 936 F.2d 851 (6th Cir.1991). It is respectfully submitted that Plaintiff has unquestionably proven his ownership and authorship of the Subject Work.

As for proof of copying, Plaintiff has provided undisputable evidence of the exact or nearly exact copying of the Subject Work. The walleye fish exploited in the Infringing Logo contains a strikingly similar, if not exactly similar, walleye to that of the Subject Work. The original elements of expression, namely the fish contour, proportionality, fin placement, scaling, coloring etc., are exactly the same and would be seen as such to any lay observer.

1. **Plaintiff Is Likely To Prevail On The Merits Of Its Copyright Infringement Claims**

As previously stated, the Infringing Logo and other advertising material contain copies of the Subject Work. These designs unquestionably infringe upon Plaintiff's copyrights. By copying the Subject Work into its logo design, Defendant has infringed Plaintiff's copyright to the Subject

Works. *See* 17 U.S.C. §106. Displaying the Infringing Logo also constitutes an act of infringement. *See* 17 U.S.C. §106(5). To the extent that co-Defendant Stratford Sign Company created the logo incorporating the Subject Work, Defendant Snider nonetheless has repeatedly caused the display, reproduction, etc. of the infringing logo, even after being put on notice of Plaintiff's rights to the Subject Work.

The respective comparisons of the works are so alike that the only explanation, whatsoever, is that Defendant exploited the Subject Work, thereby constituting "striking similarity." When the two works are so strikingly similar as to preclude the possibility of independent creation, `copying' may be proven without a showing of access. *Ty, Inc. v. GMA Accessories, Inc.,* 132 F.3d 1167, 1179 (7th Cir.1997); see also *Bucklew v. Hawkins, Ash, Baptie & Co., LLP*., 329 F.3d 923, 926 (7th Cir. 2003). In other words, "striking similarity exists when two works are so nearly alike that the only reasonable explanation for such a great degree of similarity is that the later…was copied from the first."; 4 Melville Nimmer & David Nimmer, *Nimmer on Copyright* § 13.02 (2021).

Snider, at the very least, is directly liable for the infringement that occurred after being put on notice of Plaintiff's copyrights to the Subject Work. This is not to exclude any and all secondary liability, as alleged in Plaintiff's Complaint.

2. **There Is A Clear Showing of Irreparable Harm**

"Irreparable injury may normally be presumed from a showing of copyright infringement." *Atari* at 620. As previously mentioned, the stronger the case on the merits, the less irreparable harm must be shown. *Ty, Inc* at 1172 (internal citations omitted).

Here, Defendant Snider, by and through its counsel, has repeatedly stated that it would cease and desist in exploiting the Subject Work, and repeatedly, Defendant has done the opposite. Despite clear notice of Plaintiff's copyright registration that included the original artwork, and

specific identification of infringement that continues to occur, Defendant continues to exploit the Subject Work. It is also presumed that since being put on notice, Defendant Snider has continued to allow the display of the Subject Work on his pickup truck. The logical conclusion from this presumption is that Defendant has drove his truck and continued to display the Subject Work for the general public to see, thereby advertising the Trapper's Point Camp.

At this time, it is unclear to what extent Snider has continued to exploit the Subject Work, and as such, it is impossible to quantify the damages, thus showing irreparable harm. Furthermore, if in fact Defendant has continued to drive the truck bearing the Subject Work since receiving notice of Plaintiff's copyrights, it will be extremely difficult to calculate damages as Plaintiff will be faced with the task of proving how many individuals saw the Infringing Logo, how many booked services at Trapper's Point Camp as a result of seeing the Infringing Logo, etc. Where damages will be extremely difficult to calculate, injunctive relief is appropriate to prevent the damage from occurring. *Graphic Design Marketing Inc.* at 1034, citing *General Leaseways, Inc. v. National Truck Leasing, Ass'n.*, 744 F.2d 588, 591 (7th Cir.1984).

3. **The Balance of Hardship Favors Plaintiff**

The balance of hardships unquestionably and overwhelmingly favors Plaintiff. Here, as described above, Plaintiff has suffered, and will continue to suffer, irreparable harm to its copyrights as a result of Defendant's willful use of the Subject Work in the Trapper's Point Camp logo. As previously explained, and despite repeated assurances that Snider would cease and desist in its unlawful use of the Subject Work, Defendant repeatedly has continued to exploit the Subject Artwork with reckless disregarded of Plaintiff's copyrights. This is evident from the over one hundred separate copies of the Subject Work that continue to appear within the Trapper's Point Camp Facebook account, and the photograph of the Defendant's truck published on July 29, 2022.

Any harm to Defendants would only be the loss of Defendants' ability to continue displaying and promoting his business by using artwork that infringes upon the rights of others. In other words, Defendants would lose the benefit of being allowed to continue their infringing behavior. It is respectfully requested that Defendant be ordered to remove the Subject Work from his truck. If that is not possible, then Defendant should be ordered to cover the display of the Subject Work. Either remedy would allow Defendant continued use of his truck.

4. **Enjoining Defendant from exploiting the Subject Work Will Serve the Public Interest**

The public interest in preserving the integrity of copyright laws will also be served by granting a preliminary injunction. See *Atari*, at 620. This argument is supported by courts across the country. "It is virtually axiomatic that the public interest can only be served by upholding copyright protections and correspondingly, preventing the misappropriation of skills, creative energies, and resources which are invested in the protected work." *Disney Enterprises, Inc. v. VidAngel, Inc.,* 224 F. Supp. 3d 957, 978 (C.D. Cal. 2016), aff'd 869 F.3d 848 (9th Cir. 2017) citing *Warner Bros. Entm't, Inc. v. WTV Sys.*, 824 F.Supp.2d 1003, 1015 (C.D. Cal. 2011); see also *Apple Computer, Inc. v. Franklin Computer Corp.*, 714 F.2d 1240, 1255 (3rd Cir. 1983); *Motown Record Co., L.P. v. iMesh.Com, Inc*., No. 03 Civ. 7339, 2004 WL 503720, at *7 (S.D.N.Y. Mar. 12, 2004) In short, there is a strong public interest in the enforcement of copyrights across this country.

## C. PLAINTIFF REQUESTS THAT NO SECURITY BOND BE POSTED

While the Federal Rule of Civil Procedure 65(c) generally require a movant to give security in case the enjoined party be found to have been wrongfully enjoined , the Seventh Circuit has explained that a district court may "waive the requirement of an injunction bond" when "the court

is satisfied that there's no danger that the opposing party will incur any damages from the injunction." *Habitat Educ. Ctr. v. U.S. Forest Serv.*, 607 F.3d 453, 458 (7th Cir. 2010).

Here, Defendant Snider will suffer no lawfully cognizable harm. The relief requested is narrowly tailored to removing all copies/displays of the Subject Work, including throughout the Trapper's Point Camp Facebook account, on the Defendant's truck, and any other physical displays. Defendant Snider already has an alternative non-infringing logo and uses it elsewhere to promote its business. It stands to reason that it can, and should, remove or replace all instances of the infringing logo. There is unquestionably no danger that Defendant Snider will incur damages from the injunction. An injunction would not force Defendant to cease doing business, cease operating its Facebook account, or impound his truck. Instead, the injunction will only enforce the representations Defendant already made, specifically that it will cease and desist in exploiting the Subject Work.

In the alternative, Plaintiff respectfully submits that only minimum amount be posted as Plaintiff is an individual artist who does not have a large coffer to spend on litigation and related expenses. In that respect, Plaintiff is selective in what litigation he files. Moreover, if there is any potential damage to Defendant, it is minimal. To that end, should the Court determine that a bond is warranted, that it only requires a bond of $500, with the option of payment to the Clerk of Court by check, credit card, or cash.

[*remainder of page intentionally left blank*]

## IV.     CONCLUSION

For the reasons set forth above, Plaintiff respectfully requests that its Motion be granted in its entirety.

| | |
|---|---|
| Dated: August 5, 2022 | Respectfully submitted<br>By: /s/ Dmitry Lapin<br>Dmitry Lapin, Esq.<br>Axenfeld Law Group, LLC<br>2001 Market Street, STE 2500<br>Philadelphia PA 19103<br>Dmitry@axenfeldlaw.com<br>917-979-4570<br><br>*Attorneys for Plaintiff Jon Q. Wright* |