UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WISCONSIN

| | | |
|---|---|---|
| Jon Q. Wright and JQ Licensing LLC; | : | Case No.: 3:22-cv-00347-JDP |
| Plaintiff, | : | |
| v. | : | |
| Robert Snider d/b/a Trappers Point Camp, Stratford Sign Company, LLC, Does 1-5 | : | |
| Defendant. | : | |

**MEMORANDUM OF LAW IN SUPPORT OF PLAINTIFF'S MOTION FOR ATTORNEYS' FEES AND COSTS PURSUANT TO FED. R. CIV. P. 4(d)(2)**

I. **Introduction**

Promptly after the filing Plaintiffs Jon Q Wright and JQ Licensing LLC (collectively "Plaintiff" or "Wright") Complaint in this matter, Wright served Defendant served upon Dan Drexler, owner of Defendant Stratford Sign Company, LLC ("SSC") a Request for Waiver of Service pursuant to Fed. R. Civ. P. 4(d)(1). Despite receiving Wright's Request for Waiver of Service, SSC has failed to return an executed Waiver of Service form within the required time frame. Moreover, Wright, through counsel, extended the time to return the Waiver of Service form at SSC's request, and SSC failed to return the executed Waiver of Service form within the extended period. SSC has not provided any justification whatsoever for its failure to return the Waiver of Service form in a timely manner. Therefore, this motion is made to recover Wright's costs in effectuating service on SSC, as well as the associated attorneys' fees incurred in preparing and filing the motion.

## II. Legal Standard

A defendant residing in the United States who receives notice of a lawsuit and a request for waiver of service "has a duty to avoid unnecessary costs of serving the summons." Fed.R.Civ.P. 4(d)(2). If a defendant receiving such a request refuses to waive service, "the court shall impose the costs subsequently incurred in effecting service on the defendant unless good cause for the failure be shown." *Id*. "Forcing noncooperative defendants to pay the costs of service encourages elimination of such costs." *Thompson v. Solo*, No. 03 C 8766, 2004 WL 13 85 825, at *1 (N.D.Ill. Jun. 21, 2004) (citing 4A C. Wright & A. Miller, Federal Practice and Procedure § 1092.1 (3 ed.2002)).

Moreover, "good cause" for failure to comply with a request for waiver "should be rare." Fed. R. Civ. P. 4 advisory committee's note (1993). It provides two examples: 1) where the defendant did not receive the request; and, 2) where the defendant was insufficiently literate in English to understand it. *Id*

Any costs to be imposed on a defendant for failure to comply with a request to waive service of a summons shall include the costs subsequently incurred in effecting service, as well as the reasonable expenses, including reasonable attorney's fee, of any motion required to collect the service expenses. Fed.R.Civ.P. 4(d)(2)(A)-(B).

## III. Procedural History

On June 23, 2022, Wright filed his Complaint for Copyright Infringement against Defendants Robert Snider d/b/a Trapper's Point Camp, as well as Stratford Sign Company, LLC (see Dkt #1). On June 24, 2022, Plaintiff's counsel mailed to SSC, via U.S.P.S Priority Mail, a copy of the Summons, Complaint and accompanying Exhibits, a Request for Waiver of Service, the Waiver of Service Forms, and several other notices (see **Exhibit A** to Lapin Decl., including

tracking information from U.S.P.S). According to Rule 4(d) and the Request for Waiver of Service (Dkt. #4), the deadline to return the executed Waiver of Service was July 25, 2022[1]. On July 14, 2022, within the 30-day period prescribed by Rule 4(d), Plaintiff's counsel sent an email to SSC's principal – Dan Drexler, to inquire as to the status of the waiver (see **Exhibit B** to Lapin Decl.).

From July 22, 2022 to July 27, 2022, Mr. Drexler's wife, Cara Drexler, and Plaintiff's counsel attempted to speak over the phone, however were unable to do so, due to scheduling conflicts (see Lapin Decl. ¶7). Mrs. Drexler is also described as an "Owner" according to the SSC Website (see **Exhibit C** to Lapin Decl.). On July 28, 2022, several days after the 30-day deadline, Plaintiff's counsel spoke with Mrs. Drexler regarding the nature and basis of the lawsuit itself, while also explaining the purpose of Plaintiff's Request for Waiver of Service. Plaintiff's counsel informed Mrs. Drexler that in good faith, and despite the deadline passing, Plaintiff would allow SSC to return an executed Waiver of Service. Mrs. Drexler stated that there were a number of documents received, that she was unsure which document to return, and requested Plaintiff's counsel to re-send the Waiver of Service Form via e-mail (see Lapin Decl. ¶8-10) Furthermore, Mrs. Drexler was informed during the telephone call and again via email on the following morning that the Waiver must be returned, otherwise Plaintiff will move forward with personal service on SSC and seek recovery of those costs (see **Exhibit D** to Lapin Decl. and ¶11-12 of Lapin Decl.). There was no response to this e-mail.

By August 8, 2022, the Waiver of Service was not executed nor returned to Plaintiff's counsel, nor had SSC requested any additional time to execute the Waiver or otherwise provide a justification for the delay. As a result, Plaintiff's counsel was forced to contact a local process server in order to effectuate service (see Lapin Decl. ¶14-15). Personal service on SSC was

---

[1] July 24, 2022, is exactly thirty days, however that date is a Sunday.

effectuated on August 10, 2022 (see Dkt #14). Plaintiff has incurred a cost of $143.75 to effectuate service (see **Exhibit E** to Lapin Decl.), and also $2,040.00 in attorneys' fees incurred in preparing the instant motion. The cost of service has been advanced by Plaintiff's counsel (see Lapin Decl. ¶16).

IV. **Defendant, Without Any Cause, Has Failed to Return the Waiver of Service and Should be Ordered to Reimburse Plaintiff for His Costs and Attorneys' Fees.**

Plaintiff has gone above and beyond the requirements of Rule 4(d) in order to avoid the costs of service of process. In good faith, Wright sought SSC's compliance with Rule 4(d) prior to the thirty-day deadline and even afforded SSC additional time to execute and return the Waiver of Service. Despite ample opportunity to do so, SSC failed to execute and return the Waiver of Service. Moreover, SSC provided no justification, basis, nor cause for its failure. To the extent that one may exist, it is respectfully submitted that it would failed to meet the "good cause" standard as described by the Advisory Committee in 1993.

While there was no indication that SSC did not comprehend its requirements under Rule 4(d), assuming, *arguendo*, that SSC did not fully comprehend the implications of its inaction, SSC could have asked for additional time to seek the advice of counsel, but no request for additional time was made, for any reason. Instead, SSC failed to return the Waiver of Service. Moreover, both Mr. and Mrs. Drexler are sufficiently literate in English to read the Waiver.

It is respectfully submitted, that in view of these circumstances, that SSC's failure to execute and return the Waiver of Service form necessitates an order for reimbursement of costs and attorneys' fees. While Plaintiff's counsel is unaware of a justification for SSC's failure, any explanation should be reviewed with skepticism. SSC was afforded additional time to effectuate the Waiver and Plaintiff went above and beyond the requirements of Rule 4(d) to acquire the

Waiver. Mr. Wright should now not be forced to bear the costs of service and the attorneys' fees incurred because of Defendant SSC's unreasonable failure to act.

V. **Plaintiff has incurred costs of $143.75 and reasonable attorney's fees of $2,040.00**

On August 8, 2022, Plaintiff' counsel retained a process server to effectuate service of process on SSC and was advised that the total cost would be $143.75, including mileage and printing fees (see **Exhibit E** to Lapin Decl.). The process server was retained fourteen days after the initial Rule 4(d) deadline, and ten days after resending the Waiver of Service to Mrs. Drexler.

In preparing the instant motion, Plaintiff's counsel has expended a total of 6.8 hours at a rate of $300/hour (see Lapin Decl. ¶20). In preparing the instant motion, Mr. Lapin spent the majority of time drafting Plaintiff's memorandum of law in support of the instant motion, as well as the accompanying Declaration in Support. Lesser time was spent preparing each Exhibit, researching relevant case law, and researching reasonable attorneys' fees within the community. (see **Exhibit F** to Lapin Decl).

    a. <u>Mr. Lapin spent a reasonable amount of time in preparing and filing this motion.</u>

The hours spent in preparing and filing the instant motion is reasonable under the circumstances. While some legal and factual research was necessary, the amount of time actually spent in performing these tasks was limited, because many of the legal questions addressed and are largely, undisputed. Furthermore, Wright submits that the amount of time spent drafting the motion and its supporting documentation was necessary to provide the court with a full understanding of the procedural history and to establish Wright's reasonableness for the requested attorneys' fees.

Additionally, courts in this Circuit, and across the United States, have previously found that the amount of time spent in preparing the instant motion was reasonable. The Northern District

of Illinois determined that eight hours of attorney time and three hours of paralegal time was reasonable *United States v. First Midwest Bank*, No. 94 C 7365, 1995 WL 447762 at *5 (N.D. Ill. July 21, 1995). In the Middle District of Florida, 8.7 hours was reasonable in order to prepare the same motion as is being made here (see *Butler v. Crosby*, No. 3:04CV917-J-32MMH, 2005 WL 3970740, at *6 (M.D. Fla. June 24, 2005), while the Northern District of Georgia reduced the requested hours from approximately twenty, down to 9.8 (see *SPE GO Holdings, Inc. v. Anzo*, No. 2:10-CV-00215-WCO, 2012 WL 13018386 at *8-9 (N.D. Ga. Mar. 30, 2012). A Minnesota court found eight hours to be reasonable for the same type of motion, as well (*Double S Truck Line, Inc. v. Frozen Food Exp.*, 171 F.R.D. 251, 253 (D. Minn. 1997). It is respectfully submitted that a total of 6.8 hours is reasonable, given the nature of the motion itself, as well as the research necessary to prove Plaintiff's position fully and accurately.

b. <u>Mr. Lapin's rate is reasonable under the circumstances.</u>

A reasonable hourly rate is "the rate that lawyers of similar ability and experience in the community normally charge their paying clients for the type of work in question" *Kelty v. Patterson*, No. 18-CV-762, 2019 WL 2865650, at *2 (E.D. Wis. July 3, 2019), report and recommendation adopted, No. 18-CV-762-JPS, 2019 WL 3501526 (E.D. Wis. July 31, 2019), quoting *Spegon v. Catholic Bishop of Chicago*, 175 F. 3d 544, 555 (7th Cir. 1999). It is also accepted that "the best evidence of an attorney's market rate is his or her actual billing rate for similar work." *Pickett v. Sheridan Health Care Ctr*., 664 F.3d 632, 639-640 (7th Cir. 2011).

According to survey results published by the Wisconsin Bar Association, the average hourly rate for in-state attorneys in 2008 was $188 and then $229 in 2012 (see **Exhibit G** to Lapin Decl.) The average rate then increased again in 2018 to $251 (see **Exhibit H** to Lapin Decl.). Based on this data, and employing basic mathematical calculations, the percentage increase from

2008 to 2012 was approximately 21.8%, whereas the percentage increase from 2012 to 2018 was approximately 9.6%. Admittedly, similar survey results were not found after a reasonable search. However, if using an average of the two former percentage increases as a presumptive reasonable increase for 2022 rates (15.7%), the current presumptive average hourly rate for Wisconsin attorneys is approximately $290/hour.

Moreover, national legal software provider CLIO has collected a significant amount of data concerning attorney billing rates and provides a publicly available tool that "compares aggregated and anonymized billing data from tens of thousands of legal professionals working across all states and practice areas" (see **Exhibit I** to Lapin Decl.). The data comparison demonstrates that Mr. Lapin's rate of $300 per hour is actually 24% lower than the average rate for intellectual property attorneys in Wisconsin, which is presently at $397 per hour.

Mr. Lapin is Senior Litigation Counsel at Axenfeld Law Group, LLC, a boutique law firm, specializing in the protection and enforcement of intellectual property rights. He was admitted to practice law in 2014 and in the over eight years since, has developed an expertise in copyright litigation. He is admitted to practice in New York, New Jersey, Pennsylvania, and Maine, maintains regular admission to over ten federal district courts across the United States, and often appears *pro hac vice* in other courts.

It is respectfully submitted that Mr. Lapin's rate is reasonable, based on evidence of 1) his years of experience and expertise in the field of intellectual property litigation; 2) his rate being well below the current average rate for intellectual property attorneys in Wisconsin; 3) his rate being only slightly above the current (presumptive) average rate of Wisconsin attorneys; and 4) clients, including Plaintiff, having agreed to Attorney Lapin's standard rate of $300 per hour.

## VI. Conclusion

In light of the aforementioned, Plaintiff respectfully requests that this Court enter an Order that Defendant SSC failed to execute and return the Waiver of Service, without good cause and that Defendant SSC be ordered to pay Plaintiff's costs for effectuating service at $143.75 and attorney's fees in preparing the instant motion at $2,040.00, totaling $2,183.75.

Dated: August 15, 2022
Respectfully submitted

By: /s/ Dmitry Lapin
Dmitry Lapin, Esq.
Axenfeld Law Group, LLC
2001 Market Street, STE 2500
Philadelphia PA 19103
Dmitry@axenfeldlaw.com
917-979-4570

*Attorneys for Plaintiff Jon Q. Wright*